# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-001

Filing Date: November 9, 2017

Docket No. S-1-SC-35976

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

WESLEY DAVIS,

       Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Lisa B. Riley, District Judge

Hector H. Balderas, Attorney General
Jane A. Bernstein, Assistant Attorney General
Santa Fe, NM

for Petitioner

Law Works, LLC
John A. McCall
Albuquerque, NM

for Respondent

## OPINION

**NAKAMURA, Chief Justice.**

**{1}**    This case concerns the inventory search exception to the warrant requirement. The Court of Appeals concluded that the inventory search that occurred in this case was invalid because Defendant Wesley Davis did not possess the backpack searched at the time of arrest as the backpack was not "on his person or in his physical possession . . . ." *State v. Davis*, 2016-NMCA-073, ¶¶ 1, 10-11, 387 P.3d 274. We disagree that possession in the inventory search context should be so narrowly construed. We embrace a broader definition of possession, conclude that Davis did possess the backpack at the time of arrest, and hold that

1

the inventory search was valid.  The Court of Appeals is reversed.

## I.        BACKGROUND

**{2}**      On January 12, 2012, Deputy Daniel Vasquez of the Eddy County Sheriff's Department (Sheriff's Department) arrested Davis for operating a motorcycle when his license had been revoked.  During the traffic stop, Deputy Vasquez searched Davis's backpack and discovered marijuana.  Davis was charged with one count of distribution of marijuana, a violation of NMSA 1978, Section 30-31-22(A)(1)(a) (2011).  Davis filed a motion to suppress the marijuana on December 18, 2012.  A suppression hearing was held on April 10, 2013.  At that hearing, Deputy Vasquez provided the following testimony.

**{3}**      While on patrol in a marked vehicle, Deputy Vasquez saw Davis on a motorcycle at a stop sign.  Deputy Vasquez knew Davis did not have a valid driver's license and began to follow Davis.  After traveling a short distance, Davis pulled into the driveway of his home.  Davis's property is within the city limits of Carlsbad, New Mexico and there are other houses adjacent to Davis's property.

**{4}**      Davis parked his motorcycle, took off his backpack, and placed it on top of a car parked in Davis's open-air carport, a structure with a back wall but no front or side walls.  Deputy Vasquez had parked in Davis's driveway behind Davis's motorcycle and the two men met in the driveway between the motorcycle and carport.

**{5}**      Deputy Vasquez asked Davis for his license and registration and then contacted dispatch and learned that Davis's license was in fact revoked with an arrest clause. Deputy Vasquez arrested Davis, patted him down, and asked Davis "if there was anything in the backpack that [he] needed to be aware about."  Davis responded that there was marijuana in the backpack.  Deputy Vasquez walked to the carport, seized the backpack, searched it, and discovered three plastic bags containing marijuana.

**{6}**      Deputy Vasquez asked Davis about the backpack because the backpack had been on Davis's person and there might have been valuables in the backpack.  When asked if he thought the backpack was "secured," Deputy Vasquez stated that an open-air carport is not a secure location to leave an unattended bag.  During his testimony, Deputy Vasquez acknowledged that the backpack was not on Davis's person at the time of his arrest.

**{7}**      The Sheriff's Department has a policy that any belongings in a person's possession at the time of an arrest must be inventoried, regardless of whether or not they have value. Deputy Vasquez stated that "anything on your person is gonna go with you when you're arrested."  The Sheriff's Department's inventory search policy exists to ensure that the Sheriff's Department has adequate records, to protect the Sheriff's Department, and to ensure that an arrestee's property is protected.  The policy does not differentiate between inventory searches occurring on private versus public property.

2

**{8}** The district court found that Davis's backpack was not secure at the time of the arrest but was on top of a car in an open-air carport. The court explained that "[i]t would be very easy for somebody to walk by and grab a backpack from off of the top of a vehicle which is not a normal place for storing a backpack." The court concluded that Deputy Vasquez's warrantless search of Davis's backpack was a valid inventory search and denied the motion to suppress. Davis then entered into a conditional plea in which he agreed to plead guilty to the distribution charge but reserved his right to appeal the order denying his suppression motion. *Davis*, 2016-NMCA-073, ¶ 2.

**{9}** The Court of Appeals reversed the district court's order, concluding that the warrantless search was not a valid inventory search. *Id.* ¶¶ 1, 17. We granted the State's petition for a writ of certiorari—exercising our jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972)—to decide whether the warrantless search was a valid inventory search or not.

## II. DISCUSSION

### A. Standard of Review

**{10}** The standard of review applicable in this case is well settled. "A motion to suppress evidence is a mixed question of law and fact." *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. We review the factual analysis for substantial evidence and review the legal analysis de novo. *Id.* "The appellate court must defer to the district court with respect to findings of historical fact so long as they are supported by substantial evidence." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

### B. Inventory Searches

**{11}** "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "Like all warrantless searches, however, inventory searches are presumed to be unreasonable and the burden of establishing their validity is on the State." *State v. Shaw*, 1993-NMCA-016, ¶ 5, 115 N.M. 174, 848 P.2d 1101.

**{12}** An inventory search is valid if (1) the police have control or custody of the object of the search; (2) the inventory search is conducted in conformity with established police regulations; and (3) the search is reasonable. *State v. Boswell*, 1991-NMSC-004, ¶ 7, 111 N.M. 240, 804 P.2d 1059 (citing *State v. Ruffino*, 1980-NMSC-072, ¶ 5, 94 N.M. 500, 612 P.2d 1311). The Court of Appeals concluded that the State failed to establish any of these three requirements. *Davis*, 2016-NMCA-073, ¶ 16. We address each in turn.

#### 1. Control or custody

**{13}** The Court of Appeals concluded that Deputy Vasquez did not have control or

custody of the backpack for two reasons: (1) there was no "reasonable nexus" between the arrest and the seizure of the backpack because Davis did not have "possession" of the backpack at the time of arrest and (2) the backpack was seized from Davis's private property. *Id.* ¶¶ 11-12. These conclusions warrant separate treatment.

a.       *Reasonable nexus and possession*

**{14}**     In *State v. Williams*, 1982-NMSC-041, ¶ 5, 97 N.M. 634, 642 P.2d 1093, and again in *Boswell*, 1991-NMSC-004, ¶ 7, we identified a "reasonable nexus" requirement for inventory searches. *Boswell* clarifies that this reasonable nexus requirement is not a fourth, independent element the state must prove to establish the validity of an inventory search. 1991-NMSC-004, ¶ 8. Rather, and as we explain below, the test employed to resolve the reasonable nexus requirement is the operative inquiry utilized to establish whether the police have control or custody of the object subjected to an inventory search.

**{15}**     Police may perform inventory searches of those objects over which they have *lawful* control or custody. *See Williams*, 1982-NMSC-041, ¶¶ 5-6 (explaining that control or custody "must be based on some legal ground" (internal quotation marks and citation omitted)). Whether the police have lawful control or custody of an object demands inquiry into whether there is a reasonable nexus between the arrest and the seizure of the object to be searched. *See Boswell*, 1991-NMSC-004, ¶¶ 7-8 ("This case turns on the first prong of the test we articulated in *Williams*, [1982-NMSC-041, ¶ 4]: whether the police lawfully had custody of the wallet, i.e., was there a reasonable nexus between Boswell's arrest and the seizure of the wallet?"). Whether a reasonable nexus exists between the arrest and the seizure of the object to be searched requires, in turn, inquiry into whether there was a valid basis for the inventory search of that particular object. *Boswell*, 1991-NMSC-004, ¶ 9 ("A police inventory of some possession of the arrestee . . . *presupposes that the police had some valid reason for taking custody of that object*, for it is only because of such taking of custody that the police can be said to have some obligation to safeguard the contents." (omission in original) (emphasis added) (internal quotation marks and citation omitted)). A valid basis for an inventory search exists if the search of a particular object is justified in light of the range of governmental interests that support the existence of the inventory search exception itself. *See id.* ¶ 14 ("[T]he reasonable nexus between the initial arrest and seizure is not found in a theory of probable cause . . . but in the need to safeguard defendant's property from loss and to protect the police from liability and charges of negligence.").

**{16}**     Three governmental interests support the existence of the inventory search exception: "(1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police from potential danger." *Shaw*, 1993-NMCA-016, ¶ 10 (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). We discussed the first two interests in *Boswell* and observed that "[a]n inventory protects a defendant's property in police custody from theft; conversely, it protects the police from accusations or false claims of theft of the property that was in an arrestee's possession." 1991-NMSC-004, ¶ 10. Accordingly, we concluded that "[p]roperty

4

found on the person or in the immediate possession of a lawful arrestee presents no seizure problem and may be inventoried." *Id.* ¶ 9. The foregoing discussion establishes the following conclusion: if Davis possessed the backpack at the time of arrest, then a reasonable nexus existed between the arrest and the seizure and inventory search of the backpack.

**{17}** The Court of Appeals concluded that Davis did not possess the backpack at the time of arrest because Davis did not have the backpack "on his person or in his physical possession at the time of his arrest." *Davis*, 2016-NMCA-073, ¶ 11. This conclusion stemmed from the Court's restrictive definition of "possession." *Id.* ¶ 10. It defined "possession" as limited to "having physical custody or control of an object, and not to other legal meanings and connotations that may otherwise be associated with 'possession.'" *Id.* Our case law suggests that a broader conception of possession applies in the inventory search context.

**{18}** The validity of an inventory search is assessed by examining whether the search is justified in light of the core purposes behind the inventory search exception. Therefore, the conception of possession in the inventory search context should be defined not by reference to a restrictive standard but by reference to principles consonant with the core purposes of the inventory search exception itself. So, for purposes of the inventory search exception, a defendant "possesses" any object that the defendant loses control over as a consequence of arrest and where that loss of control gives rise to the possibility that the object might be lost, stolen, or destroyed and the police potentially held liable for the loss, theft, or destruction. This more expansive conception of possession necessarily encapsulates objects other than those on the defendant's person at the time of arrest. *Boswell* illustrates the validity of this approach.

**{19}** In *Boswell*, the defendant was suspected of shoplifting, was brought to the store manager's office where police checked his identification and arrested him, and was then transported to the police station. 1991-NMSC-004, ¶ 2. After arriving at the station, the defendant discovered that his wallet had been left in the manager's office. *Id.* An officer returned to the store, retrieved the wallet, performed an inventory search of the wallet, and discovered illegal drugs inside. *Id.* The issue before this Court was whether the inventory search was permissible. *Id.* ¶¶ 3-5.

**{20}** In the course of our analysis in *Boswell*, we rejected the principle that serves as the foundation of the Court of Appeals' analysis in the present case: the fact that the wallet was not on the *Boswell* defendant's person when he was booked was not dispositive. *Id.* ¶¶ 6, 13. Indeed, we expressly noted that "[p]roperty found on the person *or* in the immediate possession of a lawful arrestee" may be inventoried. *Id.* ¶ 9 (emphasis added). This use of the disjunctive "or" indicates that objects other than those on the defendant's person at the time of arrest may, given the proper circumstances, be subject to an inventory search. We did not focus in *Boswell* on physical possession, i.e., the spatial relationship between the object and the arrestee; rather, we emphasized that the wallet was rendered unsecure as a consequence of the arrest and held that the inventory search of the defendant's wallet was

5

"justified by appropriate police concerns that defendant's property be secured." *Id.* ¶¶ 13, 15. We offered the following explanatory remarks:

> Leaving the wallet in the office, where [the] defendant had no privacy interest or expectation of security and where any number of unknown individuals may have gained access to the wallet, . . . would be careless police procedure evincing a lack of concern for the defendant's belongings. This is not a situation where the property could have been safely left where it was, nor was it a situation where custody of the property could have been safely and immediately entrusted to a friend or placed in a safe place.

*Id.* ¶ 13 (footnote omitted).

**{21}**    *Boswell* is clear: The propriety of an inventory search of any given object is not determined by examining where in relation to an arrestee the object was at the time of arrest; rather, the focus is on whether the object is made unsecure by the arrest. ¶¶ 13, 15. Thus, it makes no difference that Davis's backpack was some short distance from him at the time of arrest. Nor does it matter that Davis removed the backpack from his person and placed it on the car in the carport before speaking to the deputy. Deputy Vasquez's duty to secure Davis's property did not end simply because Davis removed the backpack from his person. Police are rightly expected to protect and secure not only those items on an arrestee's person or within the arrestee's immediate control at the time of arrest, but any item belonging to the arrestee that is rendered unsecure by the arrest. *See* 3 Wayne R. LaFave et al., *Search and Seizure: A Treatise on the Fourth Amendment* § 5.5(b), at 297, 297 n.43 (5th ed. 2012) (stating that it would be "clearly improper for the police to simply leave" unattended at the scene of an arrest those objects belonging to an arrestee that are rendered unsecure by the arrest, and collecting cases in support of this assertion).

**{22}**    The district court found that there was a risk that Davis's backpack could be lost or stolen because Davis's arrest precluded him from further controlling the backpack. We see no reason and have been given no reason to question this finding. In addition, we observe that "the scope of a permissible inventory search is broad . . . [,]" *Shaw*, 1993-NMCA-016, ¶ 11 (citing *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983)), and that officers may exercise discretion in the course of deciding whether to conduct an inventory search or not. *See Florida v. Wells*, 495 U.S. 1, 4 (1990) (observing that, while the police "must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime," the "exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment" (internal quotation marks and citation omitted)); *cf. Bertine*, 479 U.S. at 372 (observing that the Court's inventory search cases accord "deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody"). This discretionary authority necessarily flows to determinations regarding whether some particular item is susceptible to theft or loss in the wake of an arrest. We conclude that Davis did possess the backpack at the time of arrest and, therefore, a reasonable nexus existed between Davis's arrest and

the seizure of the backpack.

**b.**     *Inventory search and private property*

**{23}**     The Court of Appeals determined that the inventory search in this case was invalid and was in part predicated on the fact that Deputy Vasquez seized the backpack from Davis's private property. *Davis*, 2016-NMCA-073, ¶ 12. The Court stressed that "[a] defendant has a right to place his personal items on his private property and reasonably expect that law enforcement will not seize it without a warrant[,]" and concluded that "the government interests in the inventory search [do not] permit law enforcement to walk on [Davis's] property, enter his carport, and seize his backpack." *Id.* We disagree. These broad pronouncements are inconsistent with the legal principles that govern here.

**{24}**     The Court of Appeals notes that police cannot carry off a defendant's suitcases merely because he is arrested in his home. *Id.*; *see* 3 LaFave, *supra*, § 5.5(b), at 298. But this valid proposition is not a blanket prohibition against inventory searches on private property. The validity of any inventory search must necessarily turn on the facts presented. 3 LaFave, *supra*, § 5.5(b), at 298. Thus, while police officers cannot seize and inventory a defendant's jacket merely because the defendant is arrested in his home, officers may nevertheless require a defendant to don that jacket if a jacket would be necessary to cope with the weather and then may inventory that jacket. *Id.* at 298 n.46. Similarly, where a door to a house is broken and substantial drug money is discovered inside, the police may seize the money for inventory purposes to safeguard it. *Id.* at 298-99 n.46. What these examples illustrate is that the mere fact that the inventory search occurred on Davis's property does not render the search unconstitutional. The facts of the particular case guide the inquiry as to the constitutionality of the inventory search. *Opperman*, 428 U.S. at 373 (explaining that reasonableness of searches and seizures "cannot be fixed by *per se* rules; each case must be decided on its own facts" (internal quotation marks and citation omitted)).

**{25}**     Davis was not arrested in his home but in his driveway. The backpack was not seized from Davis's living room but from atop a car in an open-air carport. These facts are significant. *See Coffin v. Brandau*, 642 F.3d 999, 1010 (11th Cir. 2011) (discussing the expectation of privacy individuals may reasonably expect for Fourth Amendment purposes over garages and carports and observing that this question, infrequently litigated, is distinct from the question of what degree of privacy an individual may reasonably expect within the home). Moreover, the district court found that the backpack was not secure after the arrest. Given these facts, we are amply persuaded that Deputy Vasquez's decision to inventory Davis's backpack was not an unconstitutional intrusion onto Davis's private property. It was an appropriate exercise of community caretaking to protect Davis's possessions.

**c.**     *Conclusion as to custody or control*

**{26}**     A reasonable nexus did exist between the arrest and the seizure of the backpack and we hold that Deputy Vasquez did have custody or control of it. The fact that the inventory

search was conducted on Davis's private property does not cause us to doubt this conclusion.

## 2.     The other inventory search requirements

**{27}** The Court of Appeals also concluded that the State failed to establish elements two and three: that the search was made pursuant to established police regulations and that the search was reasonable. *Davis*, 2016-NMCA-073, ¶¶ 14-15. As the following analysis demonstrates, these conclusions were largely a consequence of the Court's conclusion that Davis did not possess the backpack at the time of the arrest. *See id.* ¶¶ 14-15.

**{28}** As to the second requirement, the Court of Appeals emphasized Deputy Vasquez's testimony that "the Sheriff's Department only inventor[ies] items on the person of an arrestee at the time of the arrest." *Id.* ¶ 14. Based on this testimony, the Court concluded that the seizure of the backpack was not carried out in accordance with the Department's policy because the "backpack was not on [Davis's] person at the time of his arrest." *Id.* We disagree. The Court of Appeals has mischaracterized the inventory search policy that governed here.

**{29}** Deputy Vasquez explained that the Sheriff's Department's inventory search policy mandates that "any belongings in a person's possession at the time of an arrest must be inventoried . . . ." *Id.* ¶ 5. For the reasons already stated, we do not construe this policy as directing officers to inventory *only* those items on an arrestee's person at the time of arrest. It cannot be that the policy directs officers to disregard possessions not on an arrestee's person but that are nevertheless rendered unsecure by the arrest. Indeed, Deputy Vasquez testified that the purpose of the inventory search policy is to protect the Sheriff's Department and to ensure that an arrestee's possessions are secure. Protecting the Sheriff's Department and securing an arrestee's possessions necessarily entails ensuring that *all of the belongings* of an arrestee made unsecure by an arrest are secured and protected. We see no inconsistency between the inventory search policy and Deputy Vasquez's inventory search of Davis's backpack. By seizing and searching the backpack, Deputy Vasquez secured Davis's property and protected the Sheriff's Department by eliminating a potential property-loss claim. The State demonstrated that the search was made pursuant to established police regulations.

**{30}** As to the third requirement, the Court of Appeals offered the following justifications for its conclusion that the inventory search was not reasonable: the seizure did not comply with the Sheriff's Department's inventory search policy; there is no evidence Deputy Vasquez expressed concern with protecting the backpack or its contents while it was in police custody; there is no evidence Deputy Vasquez was concerned with protecting the Sheriff's Department against a claim or dispute over lost or stolen property; and there is no evidence Deputy Vasquez was concerned with officer safety. *Id.* ¶ 15. Having rejected all of the valid bases that might explain Deputy Vasquez's decision to perform the inventory search, the Court expressed its own view of the deputy's motivations: "[T]he only reason Deputy Vasquez seized and searched the backpack," the Court asserted, "was because

8

[Davis] responded to questioning and said it contained marijuana." *Id.* Again, we disagree with the Court's assessment of the facts presented and with its conclusion.

**{31}** As we have already explained, Deputy Vasquez's decision to seize and perform an inventory search of the backpack was consistent with the Sheriff's Department's inventory search policy. The backpack was not secure at the time of arrest and Deputy Vasquez testified that his interest in the backpack arose out of his concern that it contained valuables. From these facts, we infer that Deputy Vasquez's decision to secure the backpack emanated not from an impermissible investigative motive but from an understanding that protecting and securing an arrestee's belongings is consistent with the Sheriff's Department's inventory search policy and, more generally, appropriate police conduct. *See Jason L.*, 2000-NMSC-018, ¶ 10 (explaining that an appellate court reviewing a district court's decision on a motion to suppress shall draw all reasonable inferences in support of the district court's decision); *Boswell*, 1991-NMSC-004, ¶ 11 ("[T]he lawfulness of an inventory search operates independently from any suspicion by the police of contraband that may be concealed in a container."). We conclude that the inventory search was reasonable.

## C.    Other Issues Briefed

**{32}** The State argues in the alternative that "even if this Court were to conclude that a Fourth Amendment violation did in fact occur, application of the exclusionary rule is not justified given the purpose the rule is designed to serve." Although we granted certiorari to consider this issue, we need not address it in light of our conclusion that the search was a valid inventory search and the exclusionary rule is inapplicable. We also decline to address the State's right for any reason arguments. Our disposition makes it unnecessary to do so.

## III.    CONCLUSION

**{33}** The State satisfied its burden as to all of the elements required to prove the validity of the inventory search. We affirm the district court's order denying Davis's motion to suppress and reverse the Court of Appeals. This matter is remanded to the district court for further proceedings consistent with this opinion.

**{34}    IT IS SO ORDERED**.

_____
**JUDITH K. NAKAMURA, Chief Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Justice**

_____

9

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**