# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2022-NMCA-019**

**Filing Date: December 20, 2021**

**No. A-1-CA-37870**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ANDREW ONTIVEROS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Certiorari Granted, March 29, 2022, No. S-1-SC-39186. Released for Publication May 10, 2022.

Hector H. Balderas, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Victor E. Sanchez, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## OPINION

**HENDERSON, Judge.**

**{1}**    Defendant Andrew Ontiveros appeals the district court's denial of his motion to suppress evidence recovered from the vehicle he drove at the time of his arrest for driving while his license was revoked. He maintains that the inventory search of the vehicle offended his protections under the Fourth Amendment to the United States Constitution. We agree and reverse.

## BACKGROUND

**{2}**     Farmington Police Officer Alvin Bencomo observed a moving vehicle with a broken taillight and a cracked front windshield. He conducted a traffic stop of the vehicle, which promptly pulled over at a nearby trailer park. Upon pulling over, Defendant and his passenger (Passenger) exited the vehicle. Following commands from Officer Bencomo, Defendant and Passenger reentered the vehicle. Officer Bencomo then spoke with Defendant, asked him to again exit the vehicle, and requested his driver's license, which Defendant did not have.

**{3}**     Officer Bencomo's investigation revealed that Defendant's driver's license was revoked. Defendant informed Officer Bencomo that the vehicle belonged to his grandmother (Grandmother), who was not at the scene. Officer Bencomo verified that Grandmother was the registered owner, though it is unclear if this verification included her address. Defendant further informed Officer Bencomo that the trailer next to Grandmother's vehicle was Grandmother's home, but Officer Bencomo did not verify this information. Officer Bencomo arrested Defendant for driving with a revoked license. Defendant and Passenger asked Officer Bencomo if the vehicle could be left where it was, or if Grandmother could be contacted. Officer Bencomo responded that towing the vehicle was "just policy." Passenger left the scene on foot after being told he was free to leave by Officer Bencomo.

**{4}**     Officer Bencomo took inventory of the vehicle's contents because he intended to have the vehicle towed. The inventory search revealed a container with marijuana inside, a digital scale with marijuana residue, and a pill bottle that contained methamphetamine and other controlled substances. Defendant was charged with, among other things, possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2021), and driving while his license was revoked, contrary to NMSA 1978, Section 66-5-39.1 (2013). Defendant filed a motion to suppress the evidence obtained from the vehicle, arguing that such evidence was obtained in violation of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

**{5}**     The district court held a hearing on the motion. Officer Bencomo testified that Defendant's car was towed "according to [Farmington Police Department] policy" because "[Defendant] was under arrest." A copy of the Farmington Police Department's policy for towing vehicles was admitted as an exhibit. Though Officer Bencomo acknowledged that he was not required by policy to tow the vehicle because the Farmington Police Department policy instructs officers to tow vehicles only when it is "reasonably necessary[,]" he testified that it was his standard practice to have the vehicle towed every time he arrests a driver. Officer Bencomo stated that while he knew the vehicle was parked at the owner's home, he felt towing it was necessary to protect the vehicle.

**{6}**     At the hearing, the district court made an oral finding that the vehicle was in the parking space belonging to Grandmother's trailer. However, it entered a written order

denying the motion to suppress, determining that "[i]t was reasonable for law enforcement to tow [the] vehicle despite the vehicle's location on private property[ and] the potential to release the vehicle to . . . [G]randmother, . . . because a vehicle and it's [sic] contents are items of value that could be damaged or stolen and subject law enforcement to liability." Defendant pleaded guilty to possession of a controlled substance and driving on a revoked license, and admitted to violating his conditions of probation in another case because of these charges. Both the guilty pleas and the admissions were conditioned on his right to appeal the district court's ruling on his motion to suppress.

## DISCUSSION

### The Inventory Search of the Vehicle Offended Defendant's Fourth Amendment Protections

**{7}**     On appeal, Defendant maintains that the warrantless search of the vehicle offended his protections under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The State argues that the search of the vehicle was a valid inventory search. For the reasons that follow, we agree with Defendant. As we explain, because we reverse on Fourth Amendment grounds, we need not analyze Defendant's arguments made pursuant to the New Mexico Constitution.

### Standard of Review

**{8}**     "Appellate courts review a district court's decision to suppress evidence based on the legality of a search as a mixed question of fact and law." *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. We review the district court's factual findings under a substantial evidence standard in the light most favorable to the prevailing party, and its conclusions of law de novo. *State v. Lopez*, 2009-NMCA-127, ¶ 7, 147 N.M. 364, 222 P.3d 361. "Substantial evidence is that which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Sanchez*, 2001-NMCA-109, ¶ 14, 131 N.M. 355, 36 P.3d 446.

**{9}**     When parties raise arguments pursuant to both the United States and New Mexico Constitutions, we take the interstitial approach to constitutional interpretation. *State v. Gomez*, 1997-NMSC-006, ¶¶ 20-21, 122 N.M. 777, 932 P.2d 1. Using this approach, "we ask first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached." *State v. Tapia*, 2018-NMSC-017, ¶ 12, 414 P.3d 332 (internal quotation marks and citation omitted). Where the federal constitution does not offer protection, only then do we turn to the state constitutional claim. *Id.*

### Inventory Search Exception

**{10}**    The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Warrantless searches are presumptively unreasonable. *State v. Gutierrez*, 2004-NMCA-081, ¶ 6, 136 N.M. 18, 94 P.3d 18. The burden of proving that a warrantless search was valid is borne by the State and is met by proving that an exception to the warrant requirement applies. *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95. "Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment."[1] *State v. Davis*, 2018-NMSC-001, ¶ 11, 408 P.3d 576 (alteration, internal quotation marks, and citation omitted).

**{11}** Both Defendant and the State rely on *Davis* for their respective arguments here. We agree with the parties that *Davis* governs our analysis. In that case, our Supreme Court reaffirmed that a valid inventory search requires that "(1) the police have control or custody of the object of the search; (2) the inventory search is conducted in conformity with established police regulations; and (3) the search is reasonable." *Id.* ¶ 12. There, a law enforcement officer followed a motorcyclist who the officer knew did not possess a valid driver's license. *Id.* ¶ 3. The motorcyclist parked in the driveway of his home, removed his backpack, and left it atop a parked car in the motorcyclist's open-air carport. *Id.* ¶¶ 3-4. Upon the motorcyclist's arrest, the officer performed an inventory search of the backpack, which revealed marijuana. *Id.* ¶ 5.

**{12}** With regard to the first inventory search requirement, our Supreme Court held that law enforcement had control or custody of the backpack, reasoning that it was "made unsecure by the arrest" because the arrest prevented the motorcyclist "from further controlling" it, regardless of the backpack's location on the motorcyclist's private property. *Id.* ¶¶ 21-24, 26; *see also id.* ¶ 21 ("Police are rightly expected to protect and secure not only those items on an arrestee's person or within the arrestee's immediate control at the time of arrest, but any item belonging to the arrestee that is rendered unsecure by the arrest."). As to the second factor, the Court held that the law enforcement policy at issue, i.e., taking inventory of all of the belongings in an arrestee's possession, necessarily included "*all of the belongings* of an arrestee made unsecure by an arrest[,]" not merely those on the arrestee's person. *Id.* ¶¶ 28-29. Finally, given the fact-specific inquiry that must govern an inventory search analysis, the Court concluded that the search was reasonable in light of law enforcement's concern that the backpack may contain items of value that should be secured. *Id.* ¶¶ 24, 31.

**Police Control or Custody**

**{13}** *Davis* instructs that the relevant question in assessing law enforcement's control or custody of a defendant's possessions is "whether there is a reasonable nexus

---

1Defendant's Fourth Amendment argument concerns only the inventory search exception to the warrant requirement. We limit our discussion accordingly.

between the arrest and the seizure of the object to be searched." *Id.* ¶¶ 14, 15. If a defendant possesses an object at the time of an arrest, "then a reasonable nexus exist[s] between the arrest and the seizure and inventory search of the [object]." *Id.* ¶ 16. The State argues that the reasonable nexus requirement is satisfied because Defendant could not have committed the crime for which he was arrested, i.e., driving on a revoked license, without the vehicle that was searched because "the [vehicle] was the instrumentality used to commit the offense." However, we disagree that *Davis* supports the State's proposition.

**{14}** Our Supreme Court held that "a defendant 'possesses' any object that the defendant loses control over as a consequence of arrest *and* where that loss of control gives rise to the possibility that the object might be lost, stolen, or destroyed and the police potentially held liable for the loss, theft, or destruction." *Id.* ¶ 18 (emphasis added). Through this lens, we ask "whether the object is made unsecure by the arrest." *Id.* ¶ 21. The answer here is no. While Defendant lost control of the vehicle by virtue of his arrest, under the circumstances here, the loss of control did not result in a heightened risk that the vehicle may go missing or otherwise become damaged in his absence. Officer Bencomo testified, and the district court agreed, that the vehicle Officer Bencomo confirmed was registered to Grandmother was parked in the parking space that corresponded to Grandmother's trailer. Although officers are expected to protect and secure property in a defendant's control, the risk to security of the vehicle and its contents was no greater because of Defendant's arrest than it was at any other time the vehicle was parked at the trailer without the owner immediately present.

**{15}** In light of these facts, we conclude that the vehicle was not rendered unsecure by Defendant's arrest, and that Defendant's loss of control of the vehicle did not increase the risk of loss, theft, or destruction to which the same vehicle was typically exposed while parked in the same location—its proper space at the vehicle owner's home—on any other occasion.[2]

**Established Police Regulations**

---

[2]At the suppression hearing, Officer Bencomo testified that he did not verify if Grandmother resided at the trailer and could not recall if his verification of her vehicle registration provided him with her address. Regardless, Officer Bencomo testified that he knew that the vehicle was parked at Grandmother's home. The district court's written order acknowledged that Officer Bencomo did not remember if Grandmother's vehicle registration provided her address. The order further states that the vehicle was parked "on private property[,]" and at the suppression hearing, the district court stated its belief that the vehicle was parked in the appropriate parking space for the trailer belonging to the registered owner of the vehicle, which, according to Officer Bencomo's testimony and the district court's order, was Grandmother. The parties do not dispute that the trailer belonged to Grandmother. We therefore assume that the trailer was Grandmother's home. *See State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337 (stating that we deem as conclusive factual findings that are undisputed and supported by the record); *see also Lebeck v. Lebeck*, 1994-NMCA-103, ¶ 10, 118 N.M. 367, 881 P.2d 727 (noting that while the district court's oral remarks alone do not provide a basis for reversal, we may employ them to understand the district court's findings); *Jeantete v. Jeantete*, 1990-NMCA-138, ¶ 11, 111 N.M. 417, 806 P.2d 66 (providing that we "may consider the [district] court's verbal comments in order to clarify or discern the basis for the order or action of the court below").

**{16}** As to the second inventory search requirement, we first look to the applicable law enforcement regulations. The Farmington Police Department policy for towing vehicles states, in relevant part, that

> [i]t is the policy of the Farmington Police Department to remove vehicles from the roadway or other property, public or private[,] by towing, when it is reasonably necessary to: safeguard the vehicle and/or its contents; to facilitate public safety and health in regards to unsafe vehicles, unlawfully operated vehicles, traffic obstructions, abandoned vehicles, or emergency situations; to lawfully seize a vehicle and its contents for evidentiary purposes[.]
>
> . . . .
>
> Any vehicle towed at the direction of a law enforcement officer shall have a complete inventory of the vehicle's contents performed to protect the Farmington Police Department from liability and to safeguard the property rights of the owner of the vehicle's contents.
>
> . . . .
>
> An officer may consider alternative methods of releasing the vehicle to the licensed owner, other than removing of a vehicle by towing, under situations wherein the volume of calls for service, roadway conditions, or other circumstances or factors allow for an officer to research alternative methods.
>
> . . . .
>
> An officer may consider towing a vehicle . . . [w]henever the operator of the vehicle has been arrested[.]

Officer Bencomo's testimony at the suppression hearing indicates that he did not adhere to this policy, and instead made it his policy to always tow vehicles upon a driver's arrest.

**{17}** Defendant argues that this policy affords officers excessive discretion because it allows an officer to conduct an inventory search any time a driver is arrested. The State counters that, were we to accept Defendant's argument, we would strip officers of discretion and allow law enforcement to embrace an approach to inventory searches that will result in policies instructing law enforcement, at the time of a driver's arrest, to tow, and subsequently search, every vehicle or no vehicles at all. Neither argument is persuasive.

**{18}** We are mindful that "officers may exercise discretion in the course of deciding whether to conduct an inventory search or not[,]" and that the policy outlined above

affords officers the discretion to decide whether a vehicle tow and inevitable inventory search is necessary. *Davis*, 2018-NMSC-001, ¶ 22 (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990)). However, the discretion afforded officers in these situations necessitates balance with the Fourth Amendment's protections, which require that "individual police officer[s] must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime[.]" *Wells*, 495 U.S. at 4 (internal quotation marks and citation omitted).

**{19}** While Defendant maintains that the Farmington Police Department policy provides insufficient safeguards because officers can order a vehicle tow and inventory merely by conducting an arrest, this is not supported by the record. The policy itself states that "[a]n officer *may* consider towing a vehicle" in the instance of arrest, and that "[a]n officer *may* consider alternative methods of releasing the vehicle to the licensed owner, other than . . . towing[.]" (Emphasis added.) Furthermore, Officer Bencomo testified that the policy does not require officers to conduct a vehicle tow every time an individual is arrested. We decline Defendant's invitation to hold that the policy is facially violative of the Fourth Amendment because it provides officers discretion to tow vehicles in the instance of arrest. As our Supreme Court has explained, "officers may exercise discretion in the course of deciding whether to conduct an inventory search or not" and "[t]he facts of the particular case guide the inquiry as to the constitutionality of the inventory search." *Davis*, 2018-NMSC-001, ¶¶ 22, 24.

**{20}** As to the State's argument that holding in favor of Defendant will result in an " 'all or nothing' " approach to inventory searches, we note that the situation the State warns of is precisely what occurred in this case. Officer Bencomo testified that it was his standard practice to "tow every car with any arrest . . . with drivers." While the State's argument is primarily concerned with preserving officer discretion, it is Officer Bencomo's failure to exercise discretion as outlined in the policy that contributes to our holding today. Indeed, discretion involves "cautious discernment; . . . [i]ndividual judgment; [and] the power of free decision-making." *Discretion*, *Black's Law Dictionary* (9th ed. 2009). Officer Bencomo's practice of towing the vehicle every time a driver is arrested involves no discernment or decision-making based on the unique set of circumstances that he faces with every individual arrest. In fact, we do not perceive, and the State does not offer, an explanation for this generalized practice other than as a means to discover incriminating evidence, which is not a permissible investigatory motive.[3] *See Wells*, 495 U.S. at 4.

**{21}** In sum, Officer Bencomo's testimony indicates that he did not "consider" towing Defendant's vehicle as required by the Farmington Police Department policy. Rather, he would have had Defendant's vehicle towed regardless of the circumstances, without further consideration, simply because Defendant was under arrest. We therefore conclude that Officer Bencomo failed to adhere to established law enforcement policy.

---

3Defendant argues that Officer Bencomo was actively seeking incriminating evidence in this case. Given our disposition here, however, we need not address this. *See State v. French*, 2021-NMCA-052, ¶ 13 n.3, 495 P.3d 1198 (declining to address a question "unnecessary for the resolution of the case").

**Reasonableness**

**{22}** Turning to the final inventory search requirement, we employ three considerations articulated by the Supreme Court of the United States in *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976), to assess if the inventory search was reasonable. *State v. Shaw*, 1993-NMCA-016, ¶ 10, 115 N.M. 174, 848 P.2d 1101. Generally, an inventory search is reasonable if it is made in accordance with established police regulations and in consideration of at least one of the following government interests: "(1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police from potential danger." *Id.* While we have already concluded that Officer Bencomo did not adhere to established law enforcement policy, in the interest of clarity, we nevertheless offer analysis on these three considerations.

**{23}** Above, we concluded that the vehicle was not rendered unsecure by Defendant's arrest and loss of control over it, as it was parked in its typical parking space at its owners home, and thus was in no heightened danger because of Defendant's arrest compared to any other time the vehicle was parked at the trailer without the owner immediately present. With this in mind, as to the second consideration for reasonableness, we are unconvinced that an individual holds a colorable claim against law enforcement for secured property that was lost or stolen from the place it would remain whether or not the individual was arrested. Unlike the backpack in *Davis*, an object so inherently portable that its presence in the open-air carport on the defendant's own property was insufficient to ensure its safety, we see no such protection necessary for the vehicle in question here. *See* 2018-NMSC-001, ¶ 25. Finally, we perceive no potential danger to police from a vehicle parked in its proper space at the vehicle owner's home. For these reasons, we conclude that the inventory search of the vehicle was not reasonable under the circumstances.

**CONCLUSION**

**{24}** Concluding that the State did not bear its burden to demonstrate that the warrantless search of the vehicle was valid, we reverse the district court's order denying Defendant's motion to suppress. We therefore vacate Defendant's convictions for possession of a controlled substance and driving on a revoked license. We further vacate the disposition of Defendant's probation violations premised on these charges. The case is remanded to the district court for proceedings consistent with this opinion.

**{25}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**