The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date:** December 18, 2023

**NO. S-1-SC-39186**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**ANDREW ONTIVEROS,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**John Dean, District Judge**

Hector H. Balderas, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**ZAMORA, Justice.**

{1} The issue before us is whether law enforcement violated the Fourth Amendment to the United States Constitution when, incident to an arrest, police conducted a warrantless inventory search of a vehicle that was lawfully parked at the registered owner's home. We conclude on the facts of this case that the inventory search violated Defendant's Fourth Amendment rights and affirm the Court of Appeals.

**I.   BACKGROUND**

{2} Officer Alvin Bencomo of the Farmington Police Department was on patrol when he observed a car with a broken taillight and a cracked front windshield drive past him. To initiate a traffic stop, Officer Bencomo activated his emergency lights and followed the car a short distance before it turned into a trailer park and came to a stop. There were two men in the car: Defendant, who was driving, and his passenger. When Officer Bencomo made contact with Defendant, he ran Defendant's name through dispatch and discovered Defendant's license had been revoked due to a prior conviction for driving while intoxicated. After Defendant informed Officer Bencomo that the car he was driving did not have an interlock device, the officer arrested him.

**{3}** During the traffic stop, Defendant told the officer that the car was registered to his grandmother and that he had parked it in front of her trailer. The grandmother did not appear at the scene at any time during the police investigation. After completing a license plate check, the officer confirmed that Defendant's grandmother owned the car Defendant was driving. Officer Bencomo testified that although he did not independently verify who owned the trailer, he knew that the car was parked in front of the grandmother's residence.

**{4}** After the arrest, Officer Bencomo asked Defendant whether his passenger had a valid driver's license. Instead of directly answering the question, Defendant responded by suggesting to the officer that the car should stay parked where it was in front of his grandmother's residence. Officer Bencomo rejected Defendant's suggestion, deciding instead to tow and impound the car for safekeeping because it was parked in an "open area" and "the registered owner was not on-scene." In anticipation of the impoundment, the Farmington police conducted a pre-tow inventory search of the interior and trunk of the grandmother's car. Among other contraband, the search yielded controlled substances and drug paraphernalia.

**{5}** Officer Bencomo testified that the pre-tow search of the car was consistent with standard police procedures set out in the Department's written tow and impoundment policy. Under the Department's policy, officers *may* consider towing

a vehicle when "reasonably necessary to[] safeguard the vehicle and/or its contents" among other goals. This can occur in a variety of circumstances, including "[w]henever the operator of [a] vehicle has been arrested, injured, or otherwise incapacitated" or "[w]henever the operator of [a] vehicle is found to have suspended or revoked driving privileges and there exists no properly licensed driver, designated by the owner of the vehicle, readily available to drive the vehicle." The Department's policy also clarifies the mandatory nature of a police inventory search providing that "[a]ny vehicle towed at the direction of a law enforcement officer *shall* have a complete inventory of the vehicle's contents performed to protect the [Department] from liability and to safeguard the property rights of the owner of the vehicle's contents" (emphasis added).

{6}     At the close of the suppression hearing, the district court found that the car was parked directly in front of the trailer that belonged to Defendant's grandmother, the registered owner of the car. Nonetheless, the district court denied Defendant's motion to suppress, concluding that, as a matter of law, both the impoundment and inventory search of the car were lawful. The district court determined that law enforcement (1) "was in lawful custody and control of the vehicle based on the traffic stop and arrest of Defendant," (2) "followed the scope and procedure of the [Department's policy]" given Defendant's arrest, and (3) reasonably towed

3

Defendant's vehicle despite its location on private property. Defendant thereafter pleaded guilty to possession of a controlled substance and driving with a suspended or revoked license pursuant to a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. On appeal, the Court of Appeals reversed, concluding that the State failed to satisfy any of the burdens it bears under *State v. Davis*, 2018-NMSC-001, 408 P.3d 576, and that the warrantless inventory search of the vehicle was unlawful under the Fourth Amendment. *State v. Ontiveros*, 2022-NMCA-019, ¶¶ 10-24, 508 P.3d 910.

{7}     We granted the State's petition for writ of certiorari to determine the lawfulness under the Fourth Amendment of the inventory search conducted by the police.

**II.     DISCUSSION**

**A.     Standard of Review**

{8}     Appellate review of motions to suppress presents mixed questions of law and fact. *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186. We examine whether there is substantial evidence to support the district court's factual findings, deferring to the district court's review of the testimony and other evidence presented and viewing the facts in the manner most favorable to the prevailing party. *Id.* ¶¶ 3, 8. Here, there is no challenge to the district court's factual findings, which we accept

4

and view in the manner most favorable to the State, the prevailing party in the district court. Applying the law to the facts, we determine de novo the constitutional reasonableness of the search or seizure. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**B.      The Impoundment and Inventory Doctrine**

{9}      The Fourth Amendment protects individuals from unreasonable government searches. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). The ultimate touchstone of any Fourth Amendment inquiry is reasonableness. *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973); *State v. Yazzie*, 2019-NMSC-008, ¶ 13, 437 P.3d 182. The application of the Fourth Amendment's reasonableness standard depends on the facts and circumstances of each case. *Cooper v. California*, 386 U.S. 58, 59 (1967). The State bears the burden of establishing the validity of a warrantless search, which is presumed unreasonable under the Fourth Amendment. *Davis*, 2018-NMSC-001, ¶ 11.

{10}    To justify the warrantless inventory search of the vehicle Defendant was driving at the time of his arrest, the State relies on the impoundment and inventory doctrine, which is one of three recognized community caretaking exceptions to the warrant requirement of the Fourth Amendment. *See State v. Ryon*, 2005-NMSC-005, ¶ 25, 137 N.M. 174, 108 P.3d 1032. The impoundment and inventory doctrine allows law enforcement to impound a vehicle and perform a warrantless inventory search of the vehicle for public safety and other non-criminal, non-investigatory purposes. *See State v. Byrom*, 2018-NMCA-016, ¶ 10, 412 P.3d 1109 (citing *Ryon*, 2005-NMSC-005, ¶¶ 13, 24; *Cady*, 413 U.S. at 441). It is the non-criminal nature of law enforcement's contact with citizens that gives rise to this community caretaker exception. *Id.* ¶ 33; *accord South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976).

{11}    To meet its burden, the State must demonstrate that a police officer's decision to conduct a warrantless inventory search serves a recognized community caretaking function. These functions may include removing the vehicle so it is not a traffic hazard or protecting it from theft or vandalism. *Id.* Although a police officer is not required to adopt the least intrusive means available to safeguard a vehicle and its contents, *Colorado v. Bertine*, 479 U.S. 367, 374-75 (1987), the inventory search must nonetheless be reasonable in light of all attendant facts and circumstances, *Opperman*, 428 U.S. at 375.

6

**C.      Impoundment and Inventory Search of This Vehicle Was Unreasonable**

{12}      Police inventory searches are constitutionally reasonable if (1) the object is lawfully in police control or custody, (2) the inventory of the object is made pursuant to established police regulations, and (3) the search of the object is reasonable. *Davis*, 2018-NMSC-001, ¶ 12; *State v. Williams*, 1982-NMSC-041, ¶ 4, 97 N.M. 634, 642 P.2d 1093. This three-factor test has historically provided our courts with a functional framework for analyzing whether inventory searches are constitutionally reasonable. But as the Court of Appeals recognized, "the state of the law of the impoundment and inventory doctrine has evolved from the distinctive three-part test . . . and now focuses more generally on the reasonableness of the officer's asserted custody or control of the item seized and searched." *Byrom*, 2018-NMCA-016, ¶ 26; *see Williams*, 1982-NMSC-041, ¶¶ 5-7; *State v. Boswell*, 1991-NMSC-004, ¶¶ 8-14, 111 N.M. 240, 804 P.2d 1059. In this context, reasonableness "is a function of an officer's responsibility to safeguard the citizen's property and a prudent officer's need to insulate the police from liability should the citizen's property be lost or stolen." *Byrom*, 2018-NMCA-016, ¶ 34; *see Opperman*, 428 U.S. at 369; *Boswell*, 1991-NMSC-004, ¶¶ 9-10; *State v. Ruffino*, 1980-NMSC-072, ¶ 5, 94 N.M. 500, 612 P.2d 1311.

**1.      Police Control or Custody**

{13}     To determine whether an inventory search pursuant to a law enforcement decision to tow a vehicle was reasonable, we look first to whether Defendant's vehicle was *lawfully* in police control or custody. *Davis*, 2018-NMSC-001, ¶ 15. For the police to have lawful custody or control of a driver's vehicle incident to an arrest, there must be a reasonable nexus between the arrest and the reason for searching the vehicle. *Williams*, 1982-NMSC-041, ¶ 6. As our search and seizure jurisprudence has developed, the proper focus of the reasonableness of impoundment and inventory is whether the object—here a vehicle—is made unsecure by the arrest. *Davis*, 2018-NMSC-001, ¶ 21. Properly applied, the community caretaking doctrine provides only a limited exception to the warrant requirements of the Fourth Amendment. It should not be countenanced as a broad catch-all justification for warrantless inventory searches.

{14}     We begin our analysis by determining whether the vehicle driven by Defendant was made unsecure due to an increased risk of theft or vandalism as a consequence of his arrest. Given the location of Defendant's vehicle at the time of his arrest and relying on the uncontested facts from the suppression hearing, we conclude that it was not.

{15} At the time of his arrest, the vehicle driven by Defendant was legally parked at the registered owner's home. There was no evidence and there were no findings that the vehicle created a hazard to other drivers where it was parked or that it was made less secure by Defendant's arrest. The State nonetheless argues that the inventory search was reasonable because Defendant's lawful arrest prevented him from driving the vehicle and because there was no one else who was immediately available or amenable to take possession of the vehicle given that the registered owner was not on the scene and that Defendant did not respond to Officer Bencomo's inquiry about whether the passenger had a valid driver's license.

{16} When no one is immediately available to take possession of a vehicle, law officers may have a legitimate non-investigatory reason to impound a vehicle and conduct an inventory search, such as to protect a defendant's property or to protect themselves from claims or disputes over lost or stolen property. *See, e.g., Jaynes v. Mitchell*, 824 F.3d 187, 197 (1st Cir. 2016). But those non-investigatory reasons evaporate when, as here, law enforcement knows the vehicle is legally parked at the registered owner's home. Leaving the vehicle where it was parked because no one else could immediately take possession of the vehicle did not subject the vehicle or Defendant's property to an increased risk of theft or vandalism due to his arrest. Nor did the police have an increased risk of claims or disputes about lost or stolen

property as they generally have no community-caretaking duty to protect a vehicle parked on the owner's property. *Cf.* 3 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 7.3(c), at 840 (6th ed. 2020) ("If a person is arrested in or at his place of residence and his car is parked in the garage or lot or other place where that person ordinarily leaves his car, then the police cannot justify seizure of the car on the ground that such action is needed for the protection of the vehicle and its contents.").

{17} In contrast, the State appears to rely on Officer Bencomo's testimony that the vehicle was parked in an "open area" to argue that law enforcement did have a community-caretaking duty to protect the vehicle despite its being lawfully parked at the registered owner's residence. However, the State's support for such a legal duty is speculative and points to nothing in the factual record of the district court to demonstrate the necessary risk to the vehicle. *See Davis*, 2018-NMSC-001, ¶ 21. The record establishes that Officer Bencomo knew that Defendant's grandmother was the registered owner of the vehicle and that the vehicle was lawfully parked at her residence. Under these facts, the State's reliance on the officer's unexplained characterization of the "open area" does not establish a legitimate, non-investigatory reason to impound the vehicle or conduct an inventory search.

**{18}**     The State agues generally that the Court of Appeals erred by burdening law enforcement with a new "comparative risk assessment tool" that improperly focuses on the location of the vehicle and by concluding that Defendant's arrest did not increase the risk of loss, theft, or destruction of the vehicle he was driving. We disagree. The Court of Appeals analysis falls squarely within the reasonableness parameters we most recently articulated in *Davis*, the case of principal reliance by the State, Defendant, and the Court of Appeals. One specific and important focus of the constitutional reasonableness inquiry in impoundment and inventory cases is "whether the object is made unsecure by the arrest." *Davis*, 2018-NMSC-001, ¶ 21. That inquiry necessarily entails an assessment of whether the location of the vehicle subjects it to an increased risk of theft or vandalism because of the driver's arrest, making the vehicle's location an important and consistently recognized factor in determining whether the police have lawful control and custody of it.

**{19}**     For the reasons discussed above, we conclude that this vehicle parked at its owner's residence was not under lawful custody or control by law enforcement. *But cf. id.* ("[I]t would be 'clearly improper for the police to simply leave' unattended at the scene of an arrest those objects belonging to an arrestee that are rendered unsecure by the arrest." (citation omitted)).

11

## 2. Established Police Procedures

{20} We next address the challenge to established police procedures. The district court's finding that the police followed the standardized procedure set out in the Department's policy in inventorying and impounding the car following Defendant's arrest is supported by the record below and applicable law.

{21} The Department's policy specifically requires that an officer's impoundment and inventory of a vehicle be "reasonably necessary" to "safeguard the vehicle and/or its contents" among other goals. That proviso sufficiently "circumscribe[s] the discretion of individual officers," *Bertine* 479 U.S. at 376 n.7, and the Court of Appeals properly rejected Defendant's argument that the Department's policy was facially violative of the Fourth Amendment. *Ontiveros*, 2022-NMCA-019, ¶ 19.

{22} However, the Court of Appeals also determined that the officer failed to adhere to the Department's discretionary policy because he made it his own personal policy always to tow vehicles upon a driver's arrest. *Ontiveros*, 2022-NMCA-019, ¶ 16. In so concluding, the Court of Appeals failed to "indulge in all reasonable inferences in support of the district court's decision and disregard all inferences or evidence to the contrary." *Martinez*, 2018-NMSC-007, ¶ 15 (brackets and internal quotation marks omitted).

{23}     Viewed in the manner most favorable to the State, the evidence was sufficient to support a finding that the impoundment of the car was not a foregone conclusion, but instead was consistent with the standardized criteria contained in the Department's tow and impound policy. These standardized criteria authorize the Department's officers to consider towing and impounding a vehicle when it is "reasonably necessary to," among other things, "safeguard the vehicle or its contents." The policy also provides that an officer may consider towing a vehicle when its operator has been arrested.

{24}     As confirmed by the dash-cam video of the encounter, Officer Bencomo's pre-inventory questioning of Defendant included asking Defendant whether his passenger had a valid driver's license. In asking Defendant whether his passenger had a valid driver's license, it is reasonable to conclude that Officer Bencomo was exercising the discretion afforded him under the Department's policy by trying to determine if someone else could take possession of the vehicle as an alternative to impoundment.

{25}     The Court of Appeals concluded that Officer Bencomo's testimony at the suppression hearing indicated that he did not adhere to the Department's policy and instead made it his policy always to tow vehicles upon a driver's arrest. *Ontiveros*, 2022-NMCA-019, ¶ 16. The strongest support in the record for that conclusion is

Officer Bencomo's testimony that he "*usually* tr[ies] to conduct everything standard with all [his] arrests and tow every . . . car" whose driver is arrested (emphasis added). But we do not view the officer's reference to his usual approach in deciding whether to impound a vehicle as sufficient evidence of a complete abandonment of the governing departmental tow and impound policy when, as here, his questioning of Defendant evidences the exercise of at least some consideration of whether it was reasonably necessary to impound the vehicle driven by Defendant. Considering the totality of the circumstances, indulging all reasonable inferences in support of the district court's decision, and disregarding the contrary inference drawn by the Court of Appeals from the officer's reference to his impoundment-related predilections, we conclude the police decision to impound and inventory the vehicle was consistent with the standardized criteria contained in the Department's tow and impound policy.

**3.	Reasonableness of the Impoundment and Inventory Search**

{26}	The third factor in determining whether an impoundment and inventory search is valid is that it be reasonable. *Davis*, 2018-NMSC-001, ¶ 12. An inventory search is reasonable if it furthers one of the following governmental interests: "(1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police

14

from potential danger." *Id.* ¶ 16 (internal quotation marks and citation omitted). An inventory search is not reasonable if police acted in bad faith or for the sole purpose of investigating a possible crime. *See Bertine*, 479 U.S. at 372.

{27} As analyzed above, we conclude that the vehicle Defendant was driving was not subject to a heightened risk of theft or vandalism due to his arrest compared to any other time when the vehicle was parked at the owner's residence without the owner being immediately present. Given that there was no heightened risk to the vehicle, we conclude that the vehicle did not need to be impounded and searched to protect the police against possible claims or disputes over lost or stolen property. As to the third community caretaking justification for a warrantless inventory search, there is no claim that such an impoundment and search was needed to protect the police from potential danger and no evidence in the record of any potential danger to the police were an impoundment and search not performed. Accordingly, this rationale does not bear on our analysis.

{28} As a final observation, we note that often, as here, there may be analytical overlap between a challenge to the first or second *Davis* factor—whether the object was lawfully in police custody or control or whether the inventory was made pursuant to established police regulations—and a challenge to the third factor, whether the search itself was constitutionally reasonable. *Davis*, 2018-NMSC-001,

¶ 27. In some circumstances, as in *Davis* regarding custody or control, the inquiry into the first or second factor may effectively resolve the inquiry into the third factor, and little, if any, further analysis will be necessary. *Id.* ¶¶ 27-31; *see also State v. Boswell*, 1991-NMSC-004, ¶¶ 12-14, 111 N.M. 240, 804 P.2d 1059 (concluding that analysis of first *Davis* factor tracked facts relevant to third *Davis* factor). In other circumstances, such as when an individual is also or exclusively challenging the scope or manner of the inventory search, the core purposes of the inventory doctrine will once again guide our analysis of that particular challenge. *See, e.g.*, *Ruffino*, 1980-NMSC-072, ¶¶ 1-2 (challenging the inventory search of locked car trunk upon the defendant's arrest on a minor charge); *State v. Shaw*, 1993-NMCA-016, ¶¶ 1-3, 115 N.M. 174, 848 P.2d 1101 (challenging the taking of individual cigarettes out of their pack during a booking inventory search following the defendant's arrest on a domestic disturbance charge); *State v. Vigil*, 1974-NMCA-065, ¶ 4, 86 N.M. 388, 524 P.3d 1004 (challenging inventory search of closed paper bag in locked trunk following the defendant's arrest for assault). While potentially repetitive, this analytical overlap ensures that the impoundment and inventory search exception to the Fourth Amendment remains sharply focused on the non-criminal, non-investigatory justifications for the community caretaking exemption for warrantless searches.

## III. CONCLUSION

{29} The State failed to meet its burden under the Fourth Amendment to demonstrate the reasonableness of the impoundment and warrantless inventory search of the vehicle driven by Defendant at the time of his arrest. Accordingly, we affirm the Court of Appeals in granting Defendant's motion to suppress, and we remand to the district court for further proceedings consistent with this opinion.

{30} **IT IS SO ORDERED.**

_____

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**DAVID K. THOMSON, Justice**

17