The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:**

**Filing Date:** September 18, 2023

**NO. S-1-SC-37277**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**KAYLEE R. ORTIZ,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Fred Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Walter M. Hart, III, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**VARGAS, Justice.**

{1}     It is always the State's burden to produce specific evidence to demonstrate the reasonableness of a warrantless search. This case exemplifies the importance of making a sufficient record to support both the reasoning justifying a warrantless search, as well as judicial notice of adjudicative facts pursuant to Rule 11-201 NMRA relied upon to support such a search.

{2}     The State filed its petition for writ of certiorari following the Court of Appeals' reversal of Defendant Kaylee R. Ortiz's conviction for possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2021), concluding that the district court erred when it denied Defendant's motion to suppress. *See State v. Ortiz*, A-1-CA-34703, mem. op. ¶ 1 (N.M. Ct. App. Sept. 10, 2018) (nonprecedential). Because we agree with the Court of Appeals that the State failed to meet its burden to establish the reasonableness of the warrantless search of Defendant's purse, we affirm the Court of Appeals. We nonetheless take this opportunity to remind the State and the district courts of their obligations to make a sufficient record when considering the propriety of warrantless searches and when taking judicial notice under Rule 11-201.

## I.  BACKGROUND

{3}  Clovis Police Officers James Gurule and Jonathan Howard went to the house where Defendant was known to stay to execute an arrest warrant for criminal trespass. Upon arriving, the officers saw Defendant in an alley behind her house with a purse hanging over her shoulder. The officers made contact with Defendant and informed her that they had a warrant for her arrest, at which point Officer Gurule placed Defendant in handcuffs and arrested her. Officer Howard took possession of Defendant's purse and searched it, locating a small knife and two flashlights that appeared identical, except that one was lighter than the other and the lighter flashlight did not work. He opened the lighter flashlight and found a small plastic baggie inside containing a substance that was later identified to be .14 grams of methamphetamine. Defendant was subsequently charged with one count of possession of a controlled substance.

### A.  District Court

{4}  Prior to trial, Defendant filed a motion to suppress, arguing that all controlled substances seized and statements made by Defendant when she was arrested were the result of a warrantless, illegal search and seizure. At the hearing on Defendant's motion to suppress, the State argued that the search of Defendant's purse and flashlights was a search incident to a lawful arrest, relying on the testimony of

2

Officer Howard. The district court agreed with the State and denied Defendant's motion to suppress, concluding that the search was a proper search incident to arrest. The district court also sua sponte concluded that even if the search was not a proper search incident to arrest, the purse would have been inevitably searched and the methamphetamine discovered at the jail, and it denied Defendant's motion on the alternative grounds of inevitable discovery. A jury found Defendant guilty on the single charge of possession of a controlled substance and received a suspended sentence of eighteen months of probation. Defendant then filed an appeal with the Court of Appeals.

**B.     Court of Appeals**

{5}     On appeal, Defendant challenged her conviction and the denial of her motion to suppress. She argued that the State did not meet its burden to prove that the warrantless search of her purse was reasonable under the search-incident-to-arrest exception or that the methamphetamine would have been inevitably discovered, rendering it admissible. *Ortiz*, A-1-CA-34703, mem. op. ¶ 1. The Court of Appeals agreed with Defendant and reversed the district court. *Id.* ¶ 16. The Court of Appeals concluded that "the State failed to meet its burden of proving that Officer Howard's search of Defendant's purse—including his removal and disassembly of the flashlights he found inside—was reasonable as a search incident to arrest" because

the limited evidence in the record did not support "that the purse remained either on Defendant's shoulder after she was placed under arrest or, critically, within her 'immediate control[.]'" *Id.* ¶ 9. Considering the district court's ruling that the methamphetamine would have inevitably been discovered, the Court of Appeals held that "there was no evidence adduced whatsoever regarding inventory procedures at the detention center to which Defendant was taken." *Id.* ¶ 14. The Court went on to note,

> Because the record, here, is void of even a scintilla of evidence that would allow anything more than a speculative conclusion that the "baggie" inside the flashlight inside Defendant's purse would have been found upon her arrival at the detention facility, we conclude that the district court erred in finding that the discovery of the illegally seized evidence was inevitable.

*Id.* ¶ 15. The State then filed its petition for writ of certiorari, which this Court granted.

## II.    DISCUSSION

{6}    Both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution protect against unreasonable searches. "Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable,' subject only to well-delineated exceptions." *State v. Rowell,* 2008-

4

NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967), *superseded by statute as stated in United States v. Koyomejian*, 946 F.2d 1450, 1455 (9th Cir. 1991)). "Warrantless seizures are presumed to be unreasonable and the State bears the burden of proving reasonableness." *Id.* (internal quotation marks and citation omitted).

**A.      Standard of Review**

{7}      "Appellate review of a district court's ruling on a motion to suppress involves a mixed question of fact and law. We review the contested facts in the manner most favorable to the prevailing party and defer to the factual findings of the district court if substantial evidence exists to support those findings." *Id.* ¶ 8 (internal quotation marks and citation omitted). "Rather than being limited to the record made on a motion to suppress, appellate courts may review the entire record to determine whether there was sufficient evidence to support the trial court's denial of the motion to suppress." *State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d 134; *see also State v. Martinez*, 1980-NMSC-066, ¶ 16, 94 N.M. 436, 612 P.2d 228 (stating that the scope of review "should be broadened so that the appellate court may determine if probable cause did or did not exist by an examination of all the record surrounding an arrest or search and seizure"). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the

search or seizure." *State v. Martinez,* 2018-NMSC-007, ¶ 8, 410 P.3d 186 (internal quotation marks and citation omitted).

**B.    Search Incident to Arrest**

{8}    Here, the State contends that the search of Defendant's purse was reasonable pursuant to the search-incident-to-arrest exception to the warrant requirement, arguing that the Court of Appeals erred in requiring the State to produce particularized "evidence of the presence of a weapon, instrument of escape or destructible evidence."

{9}    We recognize that "[o]ne of the most firmly established exceptions to the warrant requirement is the right on the part of the government . . . to search the person of the accused when legally arrested." *State v. Paananen*, 2015-NMSC-031, ¶ 29, 357 P.3d 958 (internal quotation marks and citation omitted). The search-incident-to-arrest exception permits "arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, [to] search both 'the person arrested' and 'the area within his immediate control'" following a lawful arrest. *Birchfield v. North Dakota*, 579 U.S. 438, 459 (2016) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). "Th[is] rule allowing contemporaneous searches is justified . . . by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the

destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." *Chimel*, 395 U.S. at 764 (internal quotation marks and citation omitted). Recognizing that generally "the federal search incident to arrest exception was construed in the same fashion as the New Mexico exception," *Rowell*, 2008-NMSC-041, ¶ 14, this Court has held, "a search incident to arrest is a reasonable preventative measure to eliminate any possibility of the arrestee's accessing weapons or evidence, without any requirement of a showing that an actual threat exists in a particular case." *Paananen*, 2015-NMSC-031, ¶ 29. "[T]he scope of a lawful search incident to arrest," however, is "defined and limited by its supporting justification[,] . . . consistent with the established principle that a warrantless search should be strictly circumscribed by the exigencies which justify its initiation." *Rowell*, 2008-NMSC-041, ¶ 14 (internal quotation marks and citation omitted). With these principles in mind, we consider the evidence presented to support Officer Howard's search of Defendant's purse and flashlight.

**1.      Search of Defendant's person**

{10}      The State contends that the search of Defendant's purse was effectively a search of her person because the purse was "'associated with the person of [Defendant].'" The district court found that because Defendant was wearing the

purse on her shoulder when she encountered the officers, "[it's the] same thing [as] searching a person's pockets when you arrest someone." In reaching its conclusion, the district court ignored an important difference between pockets and a purse—the latter could be removed from Defendant and kept safely away from her. For this reason, we are not persuaded by the district court's rationale and conclude that the evidence presented to the district court to support the search of Defendant was insufficient.

{11}     In *United States v. Knapp*, the Tenth Circuit Court of Appeals rejected an argument similar to that made by the State, holding that a search of an arrestee's person permits "searches of an arrestee's clothing, including containers concealed under or within her clothing" and that a "carried purse does *not* qualify as 'of the person.'" 917 F.3d 1161, 1166-67 (10th Cir. 2019). In reaching its conclusion, the Tenth Circuit reasoned:

> [T]he animating reasons supporting arresting officers' "unqualified authority" to search an arrestee's person are less salient in the context of visible, handheld containers such as purses. . . . Because of an arrestee's ability to always access weapons concealed in her clothing or pockets, an officer must necessarily search those areas because it would be impractical (not to mention demeaning) to separate the arrestee from her clothing. . . . Containers held in an arrestee's hand and not concealed on her body or within her clothing do not implicate such concerns to the same degree.

*Id.* at 1166-67 (citation omitted).

{12}     The *Knapp* Court further noted that treating visible handheld containers, such as purses, as part of the person presented additional concerns, stating, "[G]iven that handheld containers such as purses are easily dispossessed, classifying such containers as potentially part of an arrestee's person would necessitate unworkable determinations about what the arrestee was holding at the exact time of her arrest." *Id.* at 1167. "[A] holding to the contrary," the *Knapp* Court reasoned, "would erode the distinction between the arrestee's person and the area within her immediate control." *Id*. The *Knapp* Court concluded:

> The better formulation, we believe, would be to limit . . . searches of an arrestee's [person to the person's] clothing, including containers concealed under or within her clothing. Accordingly, visible containers in an arrestee's hand such as [an arrestee's] purse are best considered to be within the area of an arrestee's immediate control—thus governed by *Chimel*—the search of which must be justified in each case.

*Id.*

{13}     We are persuaded by the rationale of *Knapp* and adopt it here. As was the case in *Knapp*, there was no evidence offered, either at the suppression hearing or at trial, that Defendant's purse was concealed under or within her clothing. Certainly, there was no evidence offered to support the district court's finding that searching Defendant's purse is the "same thing [as] searching a person's pockets," particularly where, as here, the purse could be and was removed from Defendant's person. As such, the record does not support a finding that the search of Defendant's purse was

9

akin to a search of her person. *See State v. Vandenburg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19 ("[W]e review the facts in a light most favorable to the prevailing party, as long as the facts are supported by substantial evidence.").

**2.      Search of the area in Defendant's immediate control**

{14}      Because the search at issue here cannot be considered a search of Defendant's person, the State must establish that the searched purse was found within the area of her immediate control. *Birchfield*, 579 U.S. at 459. Such a search is limited to "'the area from within which [the arrestee] might gain possession of a weapon or destructible evidence.'" *Id.* at 471 (quoting *Chimel*, 395 U.S. at 763). This limitation is "consistent with the established principle that a warrantless search should 'be strictly circumscribed by the exigencies which justify its initiation.'" *Rowell,* 2008-NMSC-041, ¶ 14 (quoting *Terry v. Ohio*, 392 U.S. 1, 26 (1968)).

{15}      In *Arizona v. Gant*, the United States Supreme Court held, "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the [search-incident-to-arrest] rule does not apply." 556 U.S. 332, 339 (2009). The *Gant* Court recognized that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of

10

the search." *Id.* at 343. The language in *Gant* supports our interpretation that the United States Supreme Court intended to limit the scope of searches of the area in an arrestee's immediate control to instances where officers demonstrate an arrestee may gain access to a weapon or destroy evidence. The *Gant* Court reinforced this interpretation when it wrote:

> [A] search incident to arrest may only include the arrestee's person and the area within his immediate control—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy.

*Id.* at 339 (internal quotation marks and citation omitted).

{16}    In this case, we hold that the State failed to meet its burden to demonstrate the reasonableness of the officer's search of Defendant's purse because the State failed to put forth any evidence that the purse was within the Defendant's immediate control such that Defendant presented a danger of gaining possession of a weapon or was in a position to destroy evidence of her arrest. Despite the State's arguments to the contrary, there is limited evidence in the record as to the location of the purse at the time of arrest, whether it was secured, its distance from Defendant, how she was handcuffed such that she would be able to access the purse, and whether and why the officers had concerns for their own safety or the destruction of evidence. At

the suppression hearing, Officer Howard testified that Defendant was carrying her purse when he and Officer Gurule approached her and that he searched the purse. At the trial, Officer Howard testified that "[a]s Officer Gurule was placing [Defendant] under arrest into handcuffs, she had a purse draped up over her shoulder. I removed the purse so that it didn't get locked up in the handcuffs. And I did a search incident to arrest of that purse. It was on her." Officer Gurule also testified at trial, but merely observed that "Officer Howard took possession of [Defendant's] purse and property incident to arrest at that point in time. . . . He took the purse, at which point in time he looked at the contents incident to arrest." However, nothing in the testimony above, or in the record at all, details where Officer Howard searched the purse while Defendant was arrested. Specifically, there is nothing to indicate that at the time Defendant was arrested, Officer Howard and the purse were within Defendant's immediate control, only at most that they were an "arm's reach away." Further, as the testimony repeatedly indicates, Officer Howard searched the purse only after Defendant had been arrested and was in handcuffs. Absent evidence that Defendant could reach the purse to access weapons or destroy evidence, there can be no inference that the officer's search was reasonable.

{17} In reaching our conclusion, we note that the record does not reflect any evidence that Officers Howard and Gurule had concerns for their own safety or the

12

destruction of evidence. In fact, there is contrary testimony that the officer was merely searching Defendant's purse for contraband. Officer Howard testified that "[s]he was arrested, and the property at the time is going to the jail with her, so we have to search it to make sure no contraband is taken into the jail, any weapons, guns, knives." The United States Supreme Court in *Gant* made clear that the purpose of a search incident to arrest is "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." 556 U.S. at 339. To be clear, while there is no requirement that the State have "specific probable cause to believe weapons or evidence are present in a particular situation," *Rowell*, 2008-NMSC-041, ¶ 13, the State bears the burden of presenting *some* evidence of the reasonableness of the search "anchored in the specific circumstances facing an officer." *Id.* ¶ 24.

{18}   The State directs this Court to *Paananen* in support of its assertion that we should liberally construe what makes up "the area in Defendant's immediate control" and "even the handcuffing of an arrestee does not negate the reasonable possibility of access to an area subject to search." Regardless of whether we construe what makes up the area in Defendant's immediate control liberally or not, the State's argument fails because it did not provide us with any evidence that supports a conclusion that Defendant's purse was within "the area from within which [s]he

13

might gain possession of a weapon or destructible evidence." *Gant*, 556 U.S. at 339 (internal quotation marks and citation omitted).

{19} Furthermore, *Pannanen* does not provide us with any useful guidance, as it does not explain its analysis. The *Paananen* Court concluded that the search of the defendant's backpack and cigarette pack "was conducted incident to a valid arrest." 2015-NMSC-031, ¶ 29. Citing *Rowell*, 2008-NMSC-041, ¶ 25 fn.1, the *Paananen* Court explained that "a search incident to arrest is a reasonable preventative measure to eliminate any possibility of the arrestee's accessing weapons or evidence." 2015-NMSC-031, ¶ 29. But it did not provide any analysis explaining how the search was appropriate because the facts show that handcuffed arrestee in that case might have been able to access the backpack and cigarette pack searched by police. Nor did it evaluate whether "the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Gant*, 556 U.S. at 339. Finally, it did not address whether the state presented evidence that the search at issue was "anchored in the specific circumstances facing the officer." *Rowell*, 2008-NMSC-041, ¶ 24. *Paananen* is neither instructive nor controlling here.

{20} Lastly, to the extent that the State relies on *Paananen* because the officers similarly testified that they were conducting the search to "'make sure [the suspects]

14

don't take contraband to jail,'" 2015-NMSC-031, ¶ 30, the State points to no authority that permits a search incident to arrest for contraband without satisfying the requirements that any such search be to prevent an arrestee from obtaining a weapon or destroying evidence of the arrest. While other exceptions to the warrant requirement may apply, *Paananen* does not assist the State to expand searches incident to arrest to allow for searches for contraband before taking an arrestee to jail.

{21}    Because the State has not produced any evidence in the record to support a finding that the search of Defendant's purse was a search of her person or was within the area of her immediate control, we hold that the State did not meet its burden in demonstrating the reasonableness of the warrantless search pursuant to the search-incident-to-arrest exception.

## C.    Inevitable Discovery

{22}    We now turn to the district court's ruling that the methamphetamine would have inevitably been discovered when officers took Defendant to jail and conducted an inventory search of her purse. The State argues that Defendant's objections to the district court's finding of inevitable discovery are not properly preserved before this Court because Defendant never objected to nor availed herself of the opportunity to be heard pursuant to Rule 11-201(E). Alternatively, the State contends that the

district court properly took judicial notice of the jail's inventory procedure and that such a finding is sufficient to support the district court's conclusion that the methamphetamine would have inevitably been discovered. We are not persuaded by either of the State's arguments.

**1. Preservation**

{23} Our rules require that parties preserve their issues for appellate review. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). The preservation requirement includes instances when district courts take judicial notice of adjudicative facts under Rule 11-201, and the parties do not request an opportunity to be heard to object to the district court's proposed judicial notice. *See* Rule 11-201(E) ("Opportunity to be heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed."). The record indicates that Defendant made no attempt to object to the district court taking judicial notice of the jail's inventory process. Had Defendant requested an opportunity to be heard and raised her objections to the district court's sua sponte ruling on grounds not raised by the State and the associated judicial notice, the district court may have been notified of potential error and given the opportunity to correct it, including permitting the parties a fair opportunity to consider and respond

16

to the facts to be judicially noticed and creating a sufficient record for appellate review. *See Gonzales v. Shaw*, 2018-NMCA-059, ¶ 14, 428 P.3d 280 (explaining the primary purpose of the preservation rule). Accordingly, we agree Defendant's arguments against the district court's judicial notice were not preserved.

{24} However, the preservation rule is not absolute, and this Court may address unpreserved issues that involve, among others, the fundamental rights of a party. *See* Rule 12-321(B)(2) (recognizing the Court's discretion to hear unpreserved "issues involving . . . fundamental rights of a party"). As this case involves Defendant's fundamental right to be free from unreasonable searches, this Court has the inherent authority to address the issue, even if it was not preserved below, and we do so now. *See State v. Gomez*, 1997-NMSC-006, ¶ 31 n.4, 122 N.M. 777, 932 P.2d 1 (recognizing this Court's discretion to hear unpreserved search and seizure issues).

**2.     Judicial notice of inevitable discovery**

{25} Next, we turn to the circumstances surrounding the district court's decision to take judicial notice of the jail's inventory process. District courts "may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the court's territorial jurisdiction, (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, or (3) notice is provided by statute." Rule 11-201(B). However, "[w]hen a court takes

17

judicial notice of a fact, *it must be done on the record.*" *City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 7, 147 N.M. 693, 228 P.3d 477 (emphasis added). "Our trial courts should be explicit when taking judicial notice, for the benefit of the parties and the reviewing courts." *Id.* "There are two main reasons trial courts should make a clear record when taking judicial notice of a fact: (1) to facilitate appellate review and (2) to provide notice, as required by due process, to the opposing party." *Id.* (citation omitted). "The matter of which a court will take judicial notice must be a subject of common and general knowledge. The matter must be known, that is well established and authoritatively settled. Thus, uncertainty of the matter or fact in question will operate to preclude judicial notice thereof." *State v. Torres*, 1999-NMSC-010, ¶ 41, 127 N.M. 20, 976 P.2d 20 (internal quotation marks and citation omitted).

{26}     In this case, the district court did not properly take judicial notice of the jail's inventory process because it failed to establish on the record how the inventory process is the subject of common and general knowledge or is well established and settled. At the suppression hearing, the district court sua sponte took judicial notice of the inventory policies and procedures of the Curry County Detention Center without ever specifically identifying it when it stated:

> But in this case, the purse would go with [Defendant] to the
> jail . . . when you go to the jail, if you've got a purse with you, it's going

18

to be searched at the jail. So that in addition to search incident to arrest, I think there's probably an inevitable discovery rule. It would have been—it would have been searched at some point anyway. . . . [I]n addition I would say because the purse would have been searched at the jail pursuant to their policy anyway and the contents would have been logged into—I mean, that's what they have to do. They log the contents of a purse—they come into the jail and would have—the items would have been found at that time anyway, so inevitable discovery also would have resulted in the seizure of this evidence.

There is nothing in the record to show that the inventory procedures of the Curry County Detention Center are generally known within the district court's territorial jurisdiction or that they can be accurately and readily determined. The State argues that the district court may utilize its prior experiences with the jail's practices and procedures, but the district court does not explicitly, on the record, state that it has personal prior knowledge and experience of the jail's inventory policy. Further, as the Court of Appeals properly noted, it is uncertain whether the jail's inventory policy would include searching the insides of the flashlights within Defendant's purse and the district court failed to explain how such information is generally known or can be accurately and readily determined. *See Ortiz*, A-1-CA-34703, mem. op. ¶ 14. The State attempts to counter this point by directing this Court to the testimony of Officer Howard who testified that he was suspicious of the flashlights because of their different weights. However, this argument does not support that the jail's inventory procedure is the proper subject of judicial notice. Additionally,

19

because Officer Howard does not establish that he has personal knowledge of the jail's inventory process, his testimony cannot support the basis for the district court to take judicial notice of the inventory process or independently support that the flashlights would have been inevitably searched.

{27} Therefore, given that the district court did not properly and explicitly establish in the record how the policies and procedures of the Curry County Detention Center were generally known or could be accurately and readily determined, the district court erred when it took judicial notice of the jail's inventory policies. Based on this conclusion, this Court declines to address the State's invitation to adopt a categorical rule on whether district courts may or may not take judicial notice to support the application of the inevitable discovery doctrine. The State contends that the Court of Appeals concluded that judicial notice is not available in the context of the inevitable discovery doctrine. We disagree and interpret the Court of Appeals' conclusion to indicate, in line with this opinion, that the district court erred in taking judicial notice of the jail's inventory process under Rule 11-201 by its failure to explain its ruling, rendering the judicial notice improper under the circumstances. *See Ortiz*, A-1-CA-34703, mem. op. ¶ 14.

{28} Given our conclusion that the district court did not properly take judicial notice of the jail's inventory process, the State's theory of inevitable discovery fails.

20

"The inevitable discovery doctrine is an exception to the exclusionary rule that permits the admission of unlawfully seized evidence if that evidence would have been seized independently and lawfully in due course." *State v. Barragan*, 2001-NMCA-086, ¶ 18, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "In order for the inevitable discovery doctrine to apply, the lawful means by which the evidence could have been attained must be wholly independent of the illegal search." *Id.* "Like all warrantless searches, however, inventory searches are presumed to be unreasonable and the burden of establishing their validity is on the State." *State v. Davis*, 2018-NMSC-001, ¶ 11, 408 P.3d 576 (internal quotation marks and citation omitted).

{29} Because the district court did not properly take judicial notice of the jail's inventory process, there is no evidence in the record to establish the jail's inventory process and whether it would have inevitably discovered the methamphetamine in Defendant's purse. Further, there is no evidence that the jail's procedures would have included a search of the flashlights found in Defendant's purse during an inventory search. *See State v. Johnson*, 1996-NMCA-117, ¶ 15, 122 N.M. 713, 930 P.2d 1165 ("A search for purposes of making an inventory can include the search of containers so long as it is conducted according to established procedure."). As the record does not contain any evidence concerning whether the methamphetamine

would have been inevitably discovered, we hold that the State did not meet its burden to establish the validity and reasonableness of the search under the inevitable discovery doctrine.

**III. CONCLUSION**

{30} Because the State did not produce any evidence in the record to support a finding that the warrantless search of Defendant's purse was a search of her person or was within the area of her immediate control, we conclude that the State failed to meet its burden to demonstrate that the search was reasonable under the search-incident-to-arrest exception to the warrant requirement. Additionally, because the district court failed to explain how the information it relied upon to establish the jail's inventory process was generally known and how that information could be accurately and readily determined and because the State did not produce any evidence that the purse and flashlights would have been inevitably discovered, we further hold that the State failed to meet its burden to demonstrate that the search was reasonable under the inevitable discovery doctrine. Therefore, because the State failed to meet its burden to establish the reasonableness of the warrantless search of Defendant's purse, we hold that the search was a violation of Defendant's Fourth Amendment rights. We affirm the Court of Appeals' reversal of the district court's

denial of Defendant's motion to suppress and remand the case to the district court to vacate Defendant's conviction and sentence.

{31}    **IT IS SO ORDERED.**

_____
                                                **JULIE J. VARGAS, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**DAVID K. THOMSON, Justice**