This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41029**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**JAVON MARTINEZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Jason Lidyard, District Court Judge**

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** The State appeals the district court's order granting Defendant Javon Martinez's motion to suppress evidence obtained as a result of the warrantless search of his backpack. The district court ruled that the search was an invalid inventory search and Defendant's consent, obtained after the search, did not remedy violations of Defendant's constitutional rights. The State raises a number of issues in support of reversing the district court, some of which, were not preserved for review by this Court. The State argues: (1) the evidence was insufficient to support suppression because the

district court improperly disregarded uncontested evidence; (2) the district court committed fundamental error by not finding that the initial search of the backpack was a search incident to a lawful arrest and that there were exigent circumstances; (3) the second search of the backpack was a valid inventory search; and (4) Defendant consented to the search of his backpack. We affirm the district court's order granting Defendant's motion to suppress.

**BACKGROUND**

{2}     Officers stopped Defendant near his familial residence in response to a "shots fired" call. An officer directed Defendant to get off the ATV he was driving. An officer then removed Defendant's backpack, handcuffed Defendant, and conducted a pat down search. Another officer placed the backpack on the ground and soon thereafter, Defendant's wife, who was standing nearby, removed a bottle of liquor from the backpack. An officer then picked up the backpack. Aside from Defendant's wife, other family and friends congregated near the scene.

{3}     Defendant's movements were slow, he had blood shot watery eyes, slurred speech, and a strong odor of alcohol emitted from his breath. An officer advised Defendant of his *Miranda* rights after which officers searched and removed items from Defendant's clothing. An officer questioned Defendant about evading the police and told Defendant they received a report "that [Defendant was] at somebody's house popping off rounds. The officer stated, "When I go through your backpack, am I going to find a[] firearm?" Defendant responded that there was a "nine"—a nine-millimeter, semi-automatic handgun—in the backpack and said it belonged to "[his] girl." Defendant denied shooting a handgun that evening. Defendant's wife told the officers that the handgun and backpack belonged to her.

{4}     The officers concluded that they did not have probable cause to arrest Defendant for the report of shots being fired. An officer did arrest Defendant for resisting, evading or obstructing an officer and driving while intoxicated.

{5}     An officer then looked into Defendant's backpack, which had been placed in a police car, and retrieved a nine-millimeter handgun. Defendant was transported to the police station. While at the police station, an officer searched the backpack and found Fentanyl, Suboxone strips, and Methamphetamine. The officer stopped searching the backpack and asked Defendant for consent to continue searching, which Defendant provided.

{6}     Defendant was later charged by criminal information with trafficking (by possession with intent to distribute) under NMSA 1978, Section 30-31-20 (2006); aggravated driving while under the influence of intoxicating liquor or drugs (refused testing) under NMSA 1978, Section 66-8-102(D)(3) (2016); resisting, evading or obstructing an officer (arrest) under NMSA 1978, Section 30-22-1(B) (1981); negligent use of a deadly weapon (intoxication) under NMSA 1978, Section 30-7-4(A)(2) (1993);

and two counts of distribution of a controlled substance under NMSA 1978, Section 30-31-22(A) (2021).

**{7}** Defendant moved to suppress the evidence collected from his backpack, arguing that the search violated Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment to the United States Constitution. The State filed a response arguing that the search of the backpack was lawful because it was performed with Defendant's consent. Defendant's written reply argued that his consent was invalid because it was provided after the officer searched the backpack. The State filed a supplemental response arguing that the search was a lawful inventory search.

**{8}** The district court presided over an evidentiary hearing on the motion to suppress. Officer Packer testified in part that the reason the backpack was not left with family members was because Defendant had "requested that his belongings go with him to the station." However, Officer Packer could not recall if Defendant had made the request to him or to another officer and testified that if Defendant made the request to him, it would be on the lapel recording.

**{9}** The district court ruled: (1) the search was an invalid inventory search; and (2) Defendant's consent, which was provided after the search, did not remedy the unlawful search. The district found in part that Officer Packer's testimony that Defendant requested the backpack go with him to the police station lacked credibility. The district court granted the motion to suppress "all evidence collected as a result of the invalid inventory search." This appeal followed.

## DISCUSSION

**{10}** Appellate courts review a district court's decision to suppress evidence based on the legality of a search as a mixed question of fact and law. *State v. Ontiveros*, 2024-NMSC-001, ¶ 8, 543 P.3d 1191. We review the district court's factual findings under a substantial evidence standard in the light most favorable to the prevailing party, and its conclusions of law de novo. *See id.* "There is a presumption of correctness in the district court's rulings" and it is the appellant's burden on appeal to clearly demonstrate any claimed error. *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (alterations, internal quotation marks, and citation omitted).

**{11}** Under the Fourth Amendment of the United States Constitution and under Article II, Section 10 of the New Mexico Constitution, searches and seizures must be reasonable. *State v. Ortiz*, 2023-NMSC-026, ¶ 6, 539 P.3d 262. "Warrantless seizures are presumed to be unreasonable and the [s]tate bears the burden of proving reasonableness." *Id.* (internal quotation marks and citation omitted). In order to prove that a warrantless search is reasonable, the state has the burden of showing the search was justified by an exception to the warrant requirement. *State v. Baldonado*, 1992-NMCA-140, ¶ 19, 115 N.M. 106, 847 P.2d 751. Among the recognized exceptions to the warrant requirement, are "exigent circumstances, searches incident to arrest, inventory

searches, [and] consent . . . ." *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025.

## I.     Substantial Evidence Supports the District Court's Determination

**{12}**     The State first argues substantial evidence does not support the district court's finding that Officer Packer's testimony explaining that the reason he did not leave the backpack with family members was because Defendant stated he wanted his belongings to go with him, was self-serving and not corroborated by the evidence. Relying in part on *State v. Gonzales*, 1999-NMCA-027, ¶¶ 15-16, 126 N.M. 742, 975 P.2d 355, the State contends that the officer's testimony—as well as some other evidence—was uncontradicted and as such the finding should be disregarded.

**{13}**     In *Gonzales*, this Court discussed the presumptions appellate courts apply when a district court's ruling is not accompanied by findings of facts, which is to "indulge in all reasonable presumptions in support of the district court's ruling." *Id.* ¶¶ 12-15. In addition, appellate courts "will not presume the district court has rejected uncontradicted testimony." *Id.* ¶ 16. However, when a district court rules on a suppression motion, and "rejects uncontradicted testimony based solely on a determination of credibility, [the court] should indicate in the record the reasons for doing so" and "[i]n the absence of such a statement . . . , we will infer [the court] credited the uncontradicted testimony." *Id.* (alterations, internal quotation marks, and citation omitted).

**{14}**     Here, the district court explained why it found the officer's testimony regarding Defendant's request to bring the backpack to the police station not credible. The district court explained that every interaction Officer Packer had before the police station was captured by the lapel recordings and after reviewing the lapel recordings, the district court found: "At no time does [Defendant] say that he wants the backpack to be taken to the police station" or ask about "his preferences to where it would be taken, and at no time does any officer inform Officer Packer that [Defendant] has asked that the backpack be taken along with law enforcement" and "there [was] no discussion whatsoever as to the taking of the backpack or the leaving of the backpack anywhere."

**{15}**     We reviewed the lapel recordings. The content of the lapel recordings support the district court's findings above. Reviewing the evidence in the light most favorable to the suppression order, we hold that the lapel recordings provide substantial evidence supporting the district court's credibility determination as to a portion of Officer Packer's testimony. To the extent the State raises additional arguments about the sufficiency of the district court's findings, they are not well taken. The record does not support the State's view that the district court improperly disregarded other evidence about the circumstances of the dispatch, officer safety, and the presence of Defendant's family and friends at scene. The district court's order set forth the circumstances of the dispatch involving a report of shots fired and noted that the encounter took place on Defendant's family's property, in the presence of Defendant's friends and family. To the extent that the district court did not detail officer safety concerns, the order discusses those facts relevant to the warrant exception arguments on which the State invoked a

ruling—that the search of the backpack was an inventory search and/or consensual. The State's arguments would require us to reweigh the evidence to address unpreserved arguments, which as we explain below, we decline to do.

## II.       The Warrantless Search of Defendant's Backpack Was Unlawful

## A.       Search Incident to Arrest and Exigent Circumstances

**{16}**   We turn next to the State's unpreserved arguments. The State argues that the initial search of the backpack at the scene of the stop was a valid search incident to a lawful arrest. In support of this claim, the State asserts Defendant was wearing the backpack on his person at the time of arrest; despite being handcuffed, Defendant had control of the backpack because it was within an "easy lunge range" on the ground; and there was potential for the angry people at the scene to find and use the handgun.

**{17}**   The State additionally argues the district court was required to consider officer safety in its suppression analysis and argues that there were exigent circumstances permitting the officers to locate and secure the handgun because Defendant was inebriated and one cannot predict with certainty what an inebriated person will do and Defendant's family and friends might have sought retribution. The State admits that neither of these arguments were preserved for review and requests they be reviewed for fundamental error in order to avoid a miscarriage of justice.

**{18}**   "We generally do not consider issues on appeal that are not preserved below." *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 (internal quotation marks and citation omitted). However, if an issue is not preserved, appellate courts may review the issue for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. We employ the fundamental error exception to the preservation rule "only under extraordinary circumstances to prevent the miscarriage of justice." *Silva*, 2008-NMSC-051, ¶ 13 (internal quotation marks and citation omitted); *see also State v. Alingog*, 1994-NMSC-063, ¶ 11, 117 N.M. 756, 877 P.2d 562 ("The failure by the state to preserve error obviously does not itself constitute a miscarriage of justice; a miscarriage must exist *notwithstanding* failure to preserve error. . . . [I]t is only when the merits of applying those rules clearly are outweighed by other principles of substantial justice that we will apply the doctrine of fundamental error.").

**{19}**   We decline to review either of these arguments for fundamental error because the State failed to develop an argument demonstrating that the ruling on the motion to suppress would shock the conscience of the court, that substantial justice has not been served, or that the district court's decision was fundamentally unfair or undermined judicial integrity. *See Silva*, 2008-NMSC-051, ¶ 13. "Our rules requiring the preservation of questions for review are designed to do justice." *Alingog*, 1994-NMSC-063, ¶ 11. If we were to apply the fundamental error exception to the preservation rule, simply because the public has a general interest in the orderly administration of justice, as the

State requests, the exception would swallow the preservation rule's application to the State. We decline to do so and turn next to the State's remaining arguments.

## B.    Inventory Search at the Scene

**{20}**    The State contends that the search of the backpack at the scene was a valid inventory search. In support of this argument, the State contends that because Defendant wore the backpack on his person it was subject to an inventory search and because there was a loud angry scene, leaving the backpack at the scene would impede the investigation and engender accusations of loss, theft, or destruction.

**{21}**    As a preliminary matter, to the extent the State appears to be arguing that the backpack was subject to inventory search because Defendant was wearing the backpack at some point, and was therefore part of the search of Defendant's person, we disagree. In order to be subject to search, the State would have had to present evidence that Defendant's backpack had been concealed under or within his clothing, which it did not do. *See Ortiz*, 2023-NMSC-026, ¶ 13 (adopting the rationale expressed in *United States v. Knapp*, 917 F.3d 1161, 1166 (10th Cir. 2019), and holding that where there was no evidence that the defendant's purse was concealed under or within the defendant's clothing, the search of the purse was not akin to the search of defendant's person). We now address whether the search of the backpack at the scene was a valid inventory search.

**{22}**    "An inventory search is valid if (1) the police have control or custody of the object of the search; (2) the inventory search is conducted in conformity with established police regulations; and (3) the search is reasonable." *State v. Davis*, 2018-NMSC-001, ¶ 12, 408 P.3d 576; *see Ontiveros*, 2024-NMSC-001, ¶ 12 (same); *State v. Acosta*, A-1-CA-38121, mem. op. ¶ 8 (N.M. Ct. App. Mar. 9, 2022) (nonprecedential) (same). The backpack was searched twice—first at the scene and again after Defendant was transported to the police station. A firearm was discovered during the first search and the controlled substances were located during the second search.

**{23}**    We first determine whether the police had control or custody of the backpack at the scene. *See Davis*, 2018-NMSC-001, ¶ 12. The relevant question is "[w]hether there is a reasonable nexus between the arrest and the seizure of the object to be searched." *Id.* ¶¶ 14-15. If a defendant "possesses" an object at the time of an arrest, "then a reasonable nexus exist[s] between the arrest and the seizure and the inventory search of the [object]." *Id.* ¶ 16.

**{24}**    In *Davis*, our Supreme Court determined that "a defendant 'possesses' any object that the defendant loses control over as a consequence of arrest *and* where that loss of control gives rise to the possibility that the object might be lost, stolen, or destroyed and the police potentially held liable for the lost, theft, or destruction." *Id.* ¶ 18 (emphasis added). To address the possession requirement, we first determine "whether the object is made unsecure by the arrest." *Id.* ¶ 21. In determining whether the object is unsecure by the arrest, location is an important factor. *See Ontiveros*, 2024-NMSC-001,

¶ 18 ("That inquiry necessarily entails an assessment of whether the location of the vehicle subjects it to an increased risk of theft or vandalism because of the driver's arrest, making the vehicle's location an important and consistently recognized factor in determining whether the police have lawful control and custody of it.").

**{25}** Here, while Defendant lost control of his backpack by virtue of his arrest, the backpack was secure due to the following: the stop occurred at Defendant's residence; Defendant's wife claimed ownership of the backpack; the backpack was initially in the presence of Defendant's wife; other family members and several other officers who responded to scene; and the backpack was soon transferred to the security of a police car. Given these circumstances, there was no possibility the backpack could be lost, stolen, or destroyed or that the police could be held liable for its destruction because the backpack, while on the ground, remained in plain sight of everyone at the scene, the entire incident was recorded by lapel cameras, and the owner of the backpack was present. *See id.* ¶ 19 (holding the vehicle was not made unsecure because it was legally parked at the registered owner's home); *see also Acosta*, A-1-CA-38121, mem. op. ¶ 11 (holding a backpack was not unsecure where it remained in plain sight of everyone at the scene and the entire incident was recorded by an officer's lapel camera). Based on the facts of this case, we affirm the district court's finding that there was no increased risk of loss by leaving the backpack with Defendant's wife or other family member.

**{26}** We conclude, as did the district court, that the police did not have lawful control or custody of Defendant's backpack and as a result, affirm the district court's ruling that the first requirement of the *Davis* test was not met. In light of this holding, we need not consider the other requirements of a valid inventory search, and conclude that the search of the backpack at the scene and the transport of the backpack and subsequent search at the police station were not valid inventory searches.

## C.    Post-Search Consent

**{27}** The State argues that the search of Defendant's backpack at the police station was a valid search because it was performed with Defendant's signed consent. Consensual searches and seizures are one exception to the warrant requirement. *Weidner*, 2007-NMCA-063, ¶ 6.

**{28}** Officer Packer's lapel recording reveals that he searched the backpack at the police station and only after discovering drugs, did he request and obtain Defendant's consent to search the backpack. The district court found no case law to support the notion that consent obtained after an unlawful search will remedy or justify "any prior violation of . . . [D]efendant's constitutional rights." In its brief in chief, the State challenges this ruling with the following assertion, "it is easy to divine that Defendant did consent to Officer Packer's search of the backpack" and "[t]here exists a consent-to-search form[ ] signed by Defendant."[1] The State, in its brief in chief, did not develop an

---

1The State does not direct this Court to the location in the record of a signed consent to search form, nor did we locate such a form.

argument or cite any authority supporting its claim that the district court's ruling was error. "When an appellant cites no authority to support a specific proposition, [this Court] presumes no supporting authority exists." *State v. Nysus*, 2001-NMCA-102, ¶ 30, 131 N.M. 338, 35 P.3d 993.

**{29}** To the extent the State string cites New Mexico and federal cases in its reply brief for the general proposition that consent may cure a violation of constitutional rights, in the absence of an argument showing how any of those cases support the State's position on appeal, we consider this argument no further. *See* Rule 12-318(A)(4) NMRA (requiring in part that a party provide an argument with citation authority relied on).

**CONCLUSION**

**{30}** Based on the foregoing reasons, we affirm the district court's order suppressing the evidence.

**{31} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**KATHERINE A. WRAY, Judge**